HANSON BRIDGETT LLP
KATHERINE A. BOWLES, SBN 287426
kbowles@hansonbridgett.com
STEFAN R. CHACÓN, SBN 268647
SChacon@hansonbridgett.com
KENT GROVER, SBN 316579
kgrover@hansonbridgett.com
777 S. Figueroa Street, Suite 4200
Los Angeles, California 90017
Telephone: (213) 395-7620

Attorneys for Plaintiffs Leprino Foods Co.,
Leprino Foods Health & Welfare Plan

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LEPRINO FOODS COMPANY, LEPRINO FOODS HEALTH & WELFARE PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> AVANI OUTPATIENT SURGICAL CENTER, INC., a California Corporation; MOUNTAIN VIEW SURGICAL CENTER, INC., a California Corporation; THE CENTER FOR SURGERY AT BEDFORD, LLC, a California limited liability company; AMY ZARAGOZA, an individual; BABEK MOEINOLMOLKI, an indvidual; BENHAM KASHANCHI, an individual; SAMUEL KASHANI, an individual; SHERVIN AMINPOUR, an individual; RALPH MAYER, an individual; MICHAEL YADEGARI, an individual; KARAPET | Case No. 2:22-cv-7434 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Case No.

COMPLAINT

18936057.3

| | |
|---|---|
| DERMENDJIAN, an individual; SEPEHR LALEZARI, an individual; MARIO ROSENBERG, an individual; PEYMAN SOLIEMANZADEH, an individual; and DOES 1-30, | |
| Defendants. | |

This is an action brought by Plaintiffs Leprino Foods Company and Leprino Foods Health & Welfare Plan on behalf of itself and its plan enrollees (referred to herein as "Leprino") against Defendants Avani Outpatient Surgical Center, Inc., Mountain View Surgical Center, Inc., The Center for Surgery at Bedford, LLC, Amy Zaragoza, Babek Moeinolmolki, Behnam Kashanchi, Samuel Kashani, Shervin Aminpour, Ralph Mayer, Michael Yadegari, Karapet Dermendjian, Sepehr Lalezari, Mario Rosenberg, Peyman Soliemanzadeh, and DOES 1-30 (collectively, the "Defendants").

## I.    Introduction

1.    This action involves a healthcare fraud scheme targeting Leprino and its employee health plan. The Defendants, a group of corrupt outpatient surgery centers in Southern California and their owners, staff, physicians, and affiliated healthcare providers implemented a complex scheme by which they recruited patients for multiple unnecessary surgeries, often performed within a few months on the same patient, in exchange for a cash payment or inducement, such as discounted cosmetic surgery. Over the course of approximately two and a half years, the surgery centers then sent fraudulent and inflated bills to Leprino amounting to approximately $15.5 million dollars.

## II.    Parties

2.    Plaintiff Leprino Foods Company is a family-owned company that privately pays for its employee health expenses. Leprino Foods Company's

principal place of business is in Denver, Colorado.

3. Plaintiff Leprino Foods Health & Welfare Plan (the "Plan") is an employer-sponsored group health plan governed by the federal Employee Retirement and Income Security Act of 1974, as amended ("ERISA"). The Plan is considered "self-funded" or "self-insured" because the employer retains the financial risk of paying for health care claims. The Plan covers employees residing in the States of California, New Mexico, Colorado, and others

4. Defendant Avani Outpatient Surgical Center, Inc. ("Avani") is an accredited surgery center pursuant to AAAHC, meaning that it has Medicare deemed status, and, on information and belief, is subject to Medicare rules and regulations as they relate to patient safety, coding and billing, and other conditions of participation specific to surgery centers. Avani is located in Encino, California, in the County of Los Angeles.

5. Defendant Mountain View Surgical Center, Inc. ("Mountain View") is no longer an accredited surgery center, meaning it should no longer be performing procedures which involve the administration of anesthesia in doses that have the probability of placing a patient at risk for the loss of life preserving protective reflexes. However, Mountain View was accredited during all relevant times that it was engaging in the submission of claims to Leprino. Mountain View is located at the same physical building as Avani, in Encino, California, in the County of Los Angeles.

6. Defendant The Center for Surgery at Bedford, LLC ("Bedford") is an accredited surgery center pursuant to AAAHC, meaning that it has Medicare deemed status, and, on information and belief, is subject to Medicare rules and regulations as they relate to patient safety, coding and billing, and other conditions of participation specific to surgery centers. Bedford is located in Beverly Hills, California, in the County of Los Angeles.

7. The three Defendant surgery centers are referred to collectively

herein as "Surgery Center Defendants."

8. Defendant Amy Zaragoza ("Ms. Zaragoza") is an individual and former employee of Leprino who resides in the County of Los Angeles, California.

9. Defendant Babek Moeinolmolki is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who underwent procedures at all three Surgery Center Defendants. Upon information and belief, Dr. Moeinolmolki resides in the County of Los Angeles.

10. Defendant Behnam Kashanchi is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who underwent procedures at Avani and Mountain View. Upon information and belief, Dr. Kashanchi resides in the County of Los Angeles and holds himself out to the public as a plastic surgeon.

11. Defendant Samuel Kashani is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who underwent procedures at Avani and Mountain View. Upon information and belief, Dr. Kashani resides in the County of Los Angeles.

12. Defendant Shervin Aminpour is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who underwent procedures at all three Surgery Center Defendants. Upon information and belief, Dr. Aminpour resides in the County of Los Angeles and holds himself out to the public as a plastic surgeon.

13. Defendant Ralph Mayer is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who underwent procedures at Mountain View and Bedford. Upon information and belief, Dr. Mayer resides in the County of Los Angeles.

14. Defendant Michael Yadegari is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who underwent procedures at Mountain View and Bedford. Upon information and belief, Dr. Yadegari resides in the County of Los Angeles.

15. Defendant Karapet Dermendjian is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who received procedures at Bedford. Upon information and belief, Dr. Dermendjian resides in the County of Los Angeles.

16. Defendant Sepehr Lalezari is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who received procedures at Bedford. Upon information and belief, Dr. Lalezari resides in the County of Los Angeles.

17. Defendant Mario Rosenberg is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who received procedures at Bedford. Upon information and belief, Dr. Rosenberg resides in the County of Los Angeles.

18. Defendant Peyman Soliemanzadeh is an individual with a California physician and surgeon's license in active standing who billed for surgeries and other claims for patients who received procedures at Bedford. Upon information and belief, Dr. Soliemanzadeh resides in the County of Los Angeles and holds himself out to the public as a plastic surgeon.

19. Plaintiffs are currently unaware of the true names and capacities of those Defendants named and sued herein as DOES 1-30 and for that reason have sued said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to reflect their true names when ascertained, and accordingly allege, that each of the Defendants sued herein as DOES 1-30 is responsible in some manner for the occurrences alleged in this action.

Plaintiffs are further informed and believe that DOES 1-30 were the agent(s), partner(s), joint venturer(s), representative(s), and/or employee(s) of the named Defendants and, at all times, were acting within the course and scope of such agency, partnership, joint venture, representation, and/or employment in carrying out the activities described herein.

### III.     Jurisdiction and Venue

20.     The Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States; pursuant to 18 U.S.C. § 1332(a), because the suit concerns an amount in controversy of $75,000 or greater between citizens of different states.  Leprino Foods Company is located and has its principal place of business in the State of Colorado.  The Defendant entities are located in and organized under the laws of the State of California, and the individuals reside and work in the County of Los Angeles, in the State of California.  The Court may and should exercise jurisdiction pursuant to 28 U.S.C. § 1367, because state and common law claims are so related to the federal claims that they form part of the same case or controversy.

21.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Leprino's claims occurred in this Judicial District, and, alternatively, because the Defendants may be found in this Judicial District, and there is no Judicial District in which this action may otherwise be brought.

### IV.     Factual Allegations

22.     In or about October 2020, Leprino received a tip from an employee that another Leprino employee – Amy Zaragoza – was working for Mountain View at the same time that she was employed by Leprino.  Ms. Zaragoza was purportedly recruiting Leprino employees for "mommy makeovers" in exchange for a fee per patient, otherwise known in healthcare as an unlawful kickback

scheme. Following an inquiry into Ms. Zaragoza's conduct, Leprino learned that several Leprino employees had been recruited for "mommy makeovers" or other medically unnecessary surgeries to be performed at Mountain View.

23. In the spring of 2020, shortly after a lawsuit was dismissed against Mountain View, Mountain View began using the Avani name to bill claims, and, within two or three months, ceased using the name Mountain View altogether. In or about the same time, Mountain View and Avani's CEO Charles Neal, M.D. (or his designee) increased the fee schedule, which, in turn, increased the profitability of each claim billed by Avani. Avani continued engaging in several other fraudulent billing and coding practices, as discussed in more detail below.

24. Around the same time, Leprino learned that Bedford was billing claims at 10-20 times the usual and customary rate ("UCR") for healthcare services and was one of the top out-of-network billers in the entire Plan, which covers employees across the United States. Bedford advertises the same procedures as Avani and Mountain View, including vaginal repair procedures, endoscopies, hernia repair, and nasal repair. Bedford will often charge amounts not quite identical to, but close to the same rate amount as Avani, making Avani another of the top out-of-network billers. Meanwhile, Mountain View and Avani often charged the exact same amount for the same procedure, down to the cent.

25. Bedford has a connection to Mountain View and Avani, as there are at least four surgeons who regularly billed claims for patients receiving procedures at all three Surgery Center Defendants. At least 41 patients (out of 59 patients) underwent procedures at more than one of the surgery centers.

///

///

26. The table below sets forth the identities of the overlapping surgeons and locations of Avani, Mountain View and Bedford.

| Surgery Center | Location | Surgeons (Non-Exhaustive List) |
|---|---|---|
| **Mountain View Surgical Center** | 16311 Ventura Blvd. Suites 705 and 710 Encino, CA 91436 | Babek Moeinolmolki Behnam Kashanchi Samuel Kashani Shervin Aminpour Ralph Mayer Michael Yadegari |
| **Avani Outpatient Surgical Center** | 16311 Ventura Blvd. Suite 710 Encino, CA 91436 | Babek Moeinolmolki Behnam Kashanchi Samuel Kashani Shervin Aminpour |
| **The Center for Surgery at Bedford** | 436 N. Bedford Dr. Suite 101 Beverly Hills, CA 90210 | Babek Moeinolmolki Shervin Aminpour Ralph Mayer Michael Yadegari |

27. During the course of an investigation, which took months to unwind the true extent of the fraud, Leprino uncovered false and fraudulent coding and billing practices by all three Surgery Center Defendants, including, but not limited to: (1) billing for medically unnecessary procedures or procedures that were billed but not provided; (2) billing for more than one procedure on the same day at the same time on the same patient by the same surgeon; (3) upcoding, unbundling and billing unlisted codes; and (4) billing for anesthesia as if this service was provided by the treating surgeon at the same time that the surgeon was performing the surgery.

28. The Surgery Center Defendants have provided medically unnecessary endoscopies on a substantial number of patients. Based on the billing submitted, all three Surgery Center Defendants billed Leprino for a "biopsy" in 100% of the endoscopies performed on patients. The likelihood that every single patient that underwent an endoscopy needed a biopsy is very

low.  At the same time, charging for a biopsy allows the facility to collect double the payment that would have been made for an endoscopy alone. In addition, Defendant Bedford unbundled the code for "surgical supplies" every single time that it billed Leprino for an endoscopy in violation of the accepted coding rules as another way of increasing the payment made.

29.   Moreover, endoscopies are not the type of surgery that necessitate traveling to a different part of the state, or another state, in order to receive one.  Yet, at the time of their procedures, none of the 59 patients treated by the Surgery Center Defendants resided in Los Angeles County, Ventura County, or even Orange County.  They were recruited from south San Diego County or Central California and in some cases as far away as the State of New Mexico.

30.   The Surgery Center Defendants also used modifier 59, which is a method used to bypass the computer system and obtain payments on multiple surgical procedures performed on the same day, at the same time, by the same provider, at the same facility.  For example, CPT Codes 57260 and 57220 may not be billed together, but including modifier 59 allowed Defendants to obtain payment on both of these codes.

31.   As another example, Defendants billed for outpatient psychiatry services on the same day that the patient underwent surgery, in connection with Patients 1, 9, 14, 15, 29, 30, 36, 41, 42, 43, 45, and 52.  If the patients were unconscious or under the effects of anesthesia, it would not have been possible for the surgeon to provide outpatient psychiatry services at the same time.

32.   Similarly, the billing appears to be incomplete, which suggests that what was coded was not actually performed.  For each day of surgery, the following should be a separately billed as three distinct claims:  (1) facility fee; (2) surgeon fee; and (3) anesthesia provider fee.  The below chart provides examples from Patients 1 and 2.  In the case of Patient 1, there is a bill for

anesthesia for a hernia repair, but no corresponding hernia surgery, which means that the claim was not billable. In fact, the same patient – two weeks after purportedly having a hernia repaired – was subjected to an endoscopy, which is also indicative of billing fraud.

| Patient | Date of Surgery | Facility Billed | Surgeon Billed | Anesthesia Billed | Procedure Provided |
|---|---|---|---|---|---|
| 1 | 6/21/2021 | | | X | Hernia repair |
| 1 | 7/6/2021 | X | X | | Endoscopy with Biopsy |
| 2 | 7/1/2020 | X | X | | Nasal repair with graft |
| 2 | 8/21/2020 | X | | | Ovarian incision |
| 2 | 10/22/2020 | X | | | Hernia repair |

33. In addition, the billing for anesthesia appears to have been done almost exclusively using the National Provider Identifier ("NPI") of the surgeon, even though insurance and Medicare rules require that a separate anesthesia provider perform the anesthesia for patient safety purposes. Moreover, a gastrointestinal surgeon, for example, would not be certified to perform anesthesia under a general surgeon's license. Anesthesia requires separate certifications and training. Yet, based on the systematic billing of anesthesia under the surgeons' NPI number, what was billed is <u>not</u> what was done, which constitutes fraud.

34. On several occasions, the Surgery Center Defendants used unlisted codes, which are only to be used as a last resort, only when no other CPT code accurately describes the procedure or service being billed. This is because there is no established fee schedule for unlisted codes, and higher

charges lead to greater payments.  As one might expect, Defendants charged the unlisted codes on at least 22 of the 59 patients and the fees are excessive, for example, charging $47,500 to take diagnostic radiology images of the patient's body.

35. Yet another area of concern is the lack of any pre- or post-operative visits with the physicians, which risks harming the patients.  Typically, in order to receive payment, surgeons have to show that they evaluated the patient in the office and performed examinations and screenings to determine that surgery is medically necessary.  Here, none of the surgeons conducted a pre-surgery office visit.

36. In fact, based on the bills submitted by Defendants, only two out of 59 patients received an office visit from one of the surgeons.  Those two office visits were billed on the same day of the surgery, which violates the rule against ordering the surgery and performing the surgery on the same day.

37. To multiply the fraudulent billings for Defendants, they routinely performed and billed Leprino for several procedures within a short period of time on the same patient.  For example, they billed three surgeries in three consecutive months for one patient, which would not have allowed the patient to physically recover from one surgery before receiving the next one.  Based on the billing, the following is a non-exhaustive list of patients who underwent three surgeries within a few months of each other:

- For Patient 2, Mountain View billed for a head/neck/throat surgery in July 2020, followed by a gastrointestinal surgery in August 2020, followed by another gastrointestinal surgery in October 2020 (three surgeries in four months).
- For Patient 36, Mountain View and then Avani billed for a gynecology surgery in November 2020, followed by a gastrointestinal surgery in December 2020, another

gastrointestinal surgery in March 2021, and a third gastrointestinal surgery in May 2021 (four surgeries in six months).

- For Patient 39, Bedford billed for a head/neck/throat surgery in May 2020, followed by a gastrointestinal surgery in June 2020, and then an orthosurgery in July 2020 (three surgeries in three months).

- For Patient 41, Mountain View and then Avani billed for a gynecology surgery in December 2020, followed by a breast surgery in February 2021 followed by a gastrointestinal surgery in March 2021 (three surgeries in four months).

38. Based on the evidence gathered, to date, the Surgery Center Defendants were engaging in multiple false and fraudulent activities, including, but not limited to: (1) charging Leprino for various surgeries but providing the patients with cosmetic surgery or some other inducement; (2) charging and providing medically unnecessary surgeries including the above; (3) charging for services, including anesthesia services, that were not actually provided or were provided by someone else; and (4) paying for referrals from Leprino employee Ms. Zaragoza (and possibly others) to refer patients and/or to procure patients' insurance information for purposes of submitting false and fraudulent claims.

39. Together, the three Surgery Center Defendants were the at the top of the list of all providers paid by Leprino for healthcare services billed to the Plan, resulting in payments of nearly $2 million in two and a half years.

40. On information and belief, the Leprino employees are just one group of patients recruited from the same workplace by the Surgery Center Defendants, and they have engaged in the same misconduct with respect to other employers and other employer sponsored health plans.

**V.   First Claim for Relief:  Fraud Against All Defendants**

41. Leprino realleges and incorporates herein by reference each and

every allegation contained in paragraphs 1 through 40, inclusive.

42. Defendants did knowingly and willfully execute a scheme and artifice to defraud Leprino by obtaining, under false and fraudulent pretenses, representations and promises, money and property owned by, or under the custody or control of Leprino, in connection with the delivery of or payment for health care benefits, items or services.

43. All Defendants had knowledge of the wrongful scheme and intended to defraud Leprino, despite their legal duty to submit timely and accurate claims for payment.

44. In furtherance of the scheme and artifice to defraud, by way of non-exhaustive examples, Defendants knowingly and willfully submitted; or participated a scheme to knowingly and willfully aid in the submission of:

(a) Fraudulent claims that failed to disclose that Defendants had induced the patients through payments, benefits and copayment waivers to undergo surgeries;

(b) Fraudulent claims that misrepresented the nature of the procedure performed, for example, billing for a covered procedure and providing plastic surgery (a non-covered procedure) in lieu of the procedure billed;

(c) Fraudulent claims that sought payment for services that were charged using inflated CPT codes, unlisted CPT codes, and unbundled CPT codes;

(d) Fraudulent claims that demanded exorbitant fees for basic healthcare services, including, through use of falsified and unlisted CPT codes;

(e) Fraudulent claims that sought payment for procedures and services that were never provided;

(f) Fraudulent claims that sought payment for anesthesia services that were billed as if they were performed by the surgeon at the same time as the surgeon was performing the surgery; and

(g) Fraudulent claims that were tainted by an unlawful kickback scheme.

45. Defendants submitted these materially misleading and fraudulent claim statements and invoices to Leprino, all the while knowing of their falsity when made. Defendants, for example, knew at the time that they submitted such claims that the Defendants had not provided the services as billed and coded, and instead, were intended to maximize the amount of revenue collected by the Defendants.

46. Defendants' scheme to defraud was intended to and did induce Leprino's reliance in paying these fraudulent claims. Given (a) the physician's duty to do what is in the best interest of the patients, (b) that providers are required to truthfully and accurately report the care provided to patients using claim forms with CPT coding that follows the generally accepted practices of the coding industry, and (c) the providers' duty to comply with the rules and regulations imposed Federally and in the State of California for provision of patient care, billing and claims, Leprino reasonably relied upon Defendants' claims as truthful and accurate statements of the care provided in making payment to the Defendants.

47. As a direct and proximate result of this scheme, Leprino paid nearly $2 million in payments based on the fraudulent charges billed by Defendants. Leprino has been damaged by paying to Defendants amounts far in excess of what Leprino would have otherwise paid, and what could have been used to pay for legitimate claims.

48. Defendants acted intentionally and in conscious disregard of the rights of Leprino, with malice, oppression or fraud in that they knew their conduct was fraudulent and would result in severe economic harm to Leprino. Accordingly, Leprino is entitled to an award of punitive damages against Defendants.

## VI. Second Claim for Relief: Restitution under ERISA § 502(a)(3) Against all Defendants

49. Leprino realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 40, inclusive.

50. Leprino has discretionary authority and control over the administration and management of the Plan's assets, and is a Plan fiduciary under ERISA § 3(21)(A). As an ERISA plan fiduciary, Leprino has standing under ERISA § 502(a)(3) to enforce the terms of the Plan and pursue any overpayments that are made to patients or providers on their behalf. For example, the Plan states that it "has the right to seek reimbursement of any overpayments. . . [and] the Plan may file a lawsuit in its name or [any patient's] name to pursue recovery . . . from . . . any other involved individuals, insurance companies or organizations." "To the extent that the Plan makes an overpayment or erroneous payment, an equitable lien will be crated on such overpayment or erroneous payment. The lien will remain in effect until the Plan is repaid in full, and the overpayment or erroneous payment will be held in trust for the benefit of the Plan." Therefore, Leprino seeks equitable relief to redress violations of the Plan terms or to enforce Plan terms.

51. As alleged above, Defendants have engaged in a scheme of submitting intentionally misleading, fraudulent and/or erroneous claims, including but not limited to:

(a) Claims that failed to disclose that Defendants had induced the patients through payments, benefits and copayment waivers to get surgeries;

(b) Claims that misrepresented the nature of the procedure performed – i.e., billing for a covered procedure and providing plastic surgery in lieu of the procedure billed;

(c) Claims that sought payment for services that were charged using inflated CPT codes, unlisted CPT codes and unbundled CPT codes;

(d) Claims that demanded exorbitant fees for basic healthcare services, including, through use of falsified and unlisted CPT codes;

(e) Claims that sought payment for procedures and services that were never provided;

(f) Claims that were submitted as if the surgeon concurrently performed anesthesia on the patients; and

(g) Claims that were tainted by an unlawful kickback scheme.

52. Even to the extent that Defendants did not knowingly and intentionally submit false or inflated claims to Leprino, Leprino is entitled to equitable relief to enforce the terms of the Plan and recover the overpayments made. This is especially true where, as here, Defendants submitted their claims on behalf of Plan members pursuant to contractual assignments or authorized representation agreements received from the patients (the Plan members), and the providers then submitted their claims subject to the terms of the Plan. By accepting payments from the Plan, the Defendants became bound by the Plan's terms and conditions, including those provisions related to overpayments. Here, regardless of the Defendants' intent in submission of the claims, the Plan specifically provides for the Plan's right to recover overpayments made from any involved individuals or organizations. To date, none of the Defendants have returned any monies to Leprino.

53. Leprino has paid nearly $2 million to Defendants, all of which is an overpayment, that is not due or appropriate under the terms of the group-health Plan. Leprino seeks equitable restitution of the specifically-identifiable amount of each claim at issue in this case, which can be tied to a particular Defendant's bank account or practice account.

54. The entire amount of each claim is subject to equitable remedies because under applicable law, each claim was tainted by one or more of the fraudulent and unlawful acts set forth above, and the law declares the entire

value of the claim "false."

55. Defendants retain possession, custody, or control over the bank accounts, and, to the extent that they have removed the particular funds, those sums were transferred to, and remain in, other accounts in the possession, custody, or control of the Defendants, or were exchanged for other property that is in the possession, custody, or control of the Defendants. To the extent that such property itself was subsequently sold or transferred to another entity, that cash or those assets can also be traced.

56. Leprino seeks two equitable remedies under ERISA § 502(a)(3). First, Leprino seeks to enforce the Plan terms that require the return of overpayments through an imposition of an equitable lien over the overpayments or assets that can be traced from the overpayments; and the imposition of a constructive trust over the assets. Specifically, Leprino seeks an order executing such lien and requiring that the assets that are subject to this lien be returned to Leprino's Plan, and an order imposing a constructive trust and requiring that the assets held in trust be returned to Leprino's Plan.

57. Second, Leprino seeks equitable restitution to recover the assets that the Defendants unlawfully obtained as a result of each payment made on each claim. Leprino seeks an order restoring the amounts to the Plan. To the extent that, at the time of trial, the assets in the bank accounts where Leprino's payments were deposited are less than the value of the amounts to which Leprino is entitled, Leprino requests that the court impose an equitable lien and/or constructive trust over the accounts, assets, or property that can be traced from these accounts.

### VII. Third Claim for Relief:  Violations of Business & Professions Code Sections 17200 et seq. Against All Defendants

58. Leprino realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 40, inclusive.

59. The conduct referenced above, including the Defendants' submission of false and fraudulent claims for payment, constitutes unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code §§ 17200 et seq. otherwise known as "Unfair Competition Law" or "UCL."  The UCL borrows violations of other statutes, rules and regulations.  Here, the conduct alleged violates state and federal prohibitions on the submissions of false and fraudulent claims as well as state and federal fraud and abuse laws, including Cal. Bus. & Prof. Code §§ 650, 810; Cal. Penal Code §§ 549-550; 18 U.S.C. § 1347; and 42 U.S.C. § 1320a-7b.

60. In addition to being fraudulent and unlawful, the amounts purported to be charged by the Defendants were unfair in that they violated CPT coding practices and policies to increase amounts payable and used excessive charging to obtain a higher payment amount, causing harm to consumers and competitors of the providers' services.

61. Defendants' payment of incentives and referral fees to a patient recruiter (Defendant Zaragoza) is unlawful and unfair under Cal. Bus. & Prof. Code § 650(a) which prohibits the payment of incentives by "licensees" (in this case physicians and surgery center owners) to or from any person or entity in exchange for patient referrals.  These illegal and unfair acts interfered with the professional independence of the participating providers in determining proper surgical and medical treatment for their patients, and harmed competitor providers by inducing referrals to the provider that pays or incentivizes care.

62. Defendants' conduct and schemes to defraud and engage in unfair and deceptive practices caused harm to consumers and competitors, including to Leprino, specifically, by causing it to pay out monies under false and fraudulent pretenses, which could have been used to provide legitimate and medically necessary services to other patients consuming health services.

63. Leprino seeks full restitution and disgorgement of all ill-gotten gains

paid to Defendants. In addition, Leprino requests that the court impose an equitable lien and/or constructive trust over the accounts, assets, or property of the Defendants.

### VIII. Fourth Claim for Relief: Intentional Interference with Contractual Relations Against All Defendants

64. Leprino realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 40, inclusive.

65. Leprino has standing to pursue interference with contract as a direct party to the contract and/or consent signed by each employee agreeing to abide by the terms and conditions of the Plan.

66. As alleged above, the Defendants were aware that health benefit plans include provisions precluding participants from accepting services from providers in return for a payment, an inducement (such as plastic surgery) or a waiver of patient responsibility amounts. These actions caused the patients to violate their Plan terms and conditions. As a result, Defendants illegally interfered with the contract with its Plan members.

67. As a direct and proximate result of this scheme, the contractual relations have been harmed in an amount to be determined at trial.

68. Defendants acted intentionally and in conscious disregard of the rights of the patients, with malice, oppression or fraud in that they knew their conduct was tortious and would result in harm to the patients of Leprino's Plan. Accordingly, Leprino is entitled to an award of punitive damages against Defendants.

### IX. Prayer for Relief

WHEREFORE, Leprino prays for the following relief:

(1) That judgment be entered in favor of Leprino on is claims against the Defendants in an amount exceeding $75,000, exclusive of interest or costs.

(2) That the Court issue equitable relief requiring the Surgery Center

Defendants to return the amounts paid per claim to the Surgery Center Defendants and impose a constructive trust and/or equitable lien on the Surgery Center Defendants.

    (3)    That the Court order restitution of all ill-gotten gains and impose a constructive trust and/or equitable lien on the Defendants.

    (4)    That the Court award punitive damages against the Defendants in an amount to be proven at trial.

    (5)    That the Court award reasonable attorneys' fees and costs to Leprino.

    (6)    That Leprino be granted all such other legal and equitable relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

A jury trial is requested for all issues so triable.

Dated: October 11, 2022

Respectfully submitted,

HANSON BRIDGETT LLP

By: /s/ Katherine A. Bowles

KATHERINE A. BOWLES
Attorneys for Plaintiffs
LEPRINO FOODS COMPANY
AND LEPRINO FOODS HEALTH &
WELFARE PLAN