1  HANSON BRIDGETT LLP
   KATHERINE A. BOWLES, SBN 287426
2  kbowles@hansonbridgett.com
   STELLA PADILLA, SBN 301590
3  spadilla@hansonbridgett.com
   ROBERT G. DAVIS, SBN 304758
4  rdavis@hansonbridgett.com
   ANGELA HAN, SBN 317137
5  ahan@hansonbridgett.com
   777 S. Figueroa Street, Suite 4200
6  Los Angeles, California 90017
   Telephone: (213) 395-7620
7
   Attorneys for Leprino Foods Company,
8  Leprino Foods Health & Welfare Plan

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| LEPRINO FOODS COMPANY; LEPRINO FOODS HEALTH & WELFARE PLAN, <br><br> Plaintiffs, <br><br> v. <br><br> AVANI OUTPATIENT SURGICAL CENTER, INC., a California Corporation; MOUNTAIN VIEW SURGICAL CENTER, INC., a California Corporation; THE CENTER FOR SURGERY AT BEDFORD, LLC, a California limited liability company; AMY ZARAGOZA, an individual; BABAK MOEINOLMOLKI, an individual; BEHNAM KASHANCHI, an individual; SAMUEL KASHANI, an individual; SHERVIN AMINPOUR, an individual; RALPH MAYER, an individual; MICHAEL YADEGARI, an individual; KARAPET DERMENDJIAN, an individual; SEPEHR LALEZARI, an individual; MARIO ROSENBERG, an individual; PEYMAN SOLIEMANZADEH, an individual; and DOES 1-30, <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | **Case No. 2:22-cv-07434 DSF (JC)** <br><br> **LEPRINO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT CRISTINA "LUZ" PERRYMAN** <br><br> Judge: Hon. Dale S. Fischer Date: March  March 25, 2024 <br> Time:   1:30 PM <br> Crtrm.: 7D <br><br> **NOTICE OF APPLICATION AND DECLARATION OF KATHERINE A. BOWLES FILED HEREWITH; [PROPOSED] ORDER LODGED HEREWITH** <br><br> Action Filed:  October 12, 2022 <br> Trial Date:     August 13, 2024 |

20162780.3

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND................................. 2

III.  LEGAL STANDARD ........................................................................... 3

IV.   ARGUMENT....................................................................................... 5

    A.    Rule 55(b) Supports an Award of Default Judgment Against Ms. Perryman ....................................................... 5

    B.    The *Eitel* Factors Support Granting Leprino's Application for Default Judgment ........................................ 6

        1.    Leprino Will Suffer Undue Prejudice Absent Default Judgment Against Perryman .............................. 6

        2.    Perryman's Role in the Scheme is Well-Pleaded and Leprino Will Prevail on the Claims Against Her ................. 7

            a.    Ms. Perryman's Conduct Amounts to Fraud............. 8

            b.    Leprino's Equitable Remedies Under ERISA........... 9

            c.    Ms. Perryman's Violations of the UCL ................... 10

            d.    Ms. Perryman's Intentional Interference with the Contractual Relations Between Leprino and Its Plan Members. ................................... 10

        3.    The Request for Monetary Damages, Attorney Fees, and Costs are Reasonable, Documented, and In Accordance With the Allegations and Relief Pled ............ 11

        4.    There is No Potential Dispute of Material Facts............... 15

        5.    There Is No Evidence of Excusable Neglect................... 15

        6.    A Decision on the Merits Does Not Weigh Against Entering Default Judgment Given Perryman's Consistent Failure to Appear ........................................ 16

V.    CONCLUSION ................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alan Neuman Prods., Inc. v. Albright*,
   862 F.2d 1388 (9th Cir. 1988) ................................................................ 4

*Aldabe v. Aldabe*,
   616 F.2d 1089 (9th Cir. 1980) ................................................................ 3

*Am. Motorcycle Assn. v. Superior Ct.*,
   20 Cal. 3d 578 (1978) .......................................................................... 12

*Bank v. Karasevic*,
   No. 11CV00896J, 2015 WL 12977100 (N.D. Cal. Oct. 16,
   2015) ..................................................................................................... 6

*Bay City v. ILWU-PMA Welfare Plan Board of Trustees & ILWU-
   PMA Welfare Plan*,
   2018 WL 1942765 (C.D. Cal., Feb. 1, 2018) ........................................ 10

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
   683 F.3d 1083 (9th Cir. 2012) ................................................................ 9

*Bui v. Nguyen*,
   230 Cal. App. 4th 1357 (2014) ...................................................... 13, 14

*In re Consolidated Pretrial Proceedings in Air West Securities
   Litigation ("Air West")*,
   436 F.Supp. 1281 (N.D. Cal. 1977) .............................................. 11, 12

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir.2012) ............................................................... 10

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ...................................................... *passim*

*Elektra Entertainment Group Inc. v. Crawford*,
   226 F.R.D. 388 (C.D. Cal. 2005) ......................................................... 16

*Fed. Deposit Ins. Corp. Butte Cmty. Bank v. Ching*,
   No. 213CV01710KJMEFB, 2017 WL 2225094 (E.D. Cal. May
   22, 2017)............................................................................................... 13

*Geddes v. United Fin. Grp.*,
   559 F.2d 557 (9th Cir. 1977) .................................................................. 8

*Int. Painters and Allied Trades Ind. Pension Fund v. R. W.*
   *Amrine Drywall Co., Inc.*,
   239 F.Supp.2d 26 (2002) ............................................................. 12, 13

*Lazar v. Superior Court*,
   12 Cal.4th 631 (1996) ............................................................................ 8

*McCormick v. Pub. Employees' Ret. Sys.*,
   90 Cal. App. 5th 996 (2023) ................................................................ 14

*Meadows v. Dominican Republic*,
   817 F.2d 517 (9th Cir. 1987) ................................................................. 5

*PepsiCo, Inc. v. California Security Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ............................................. 5, 8

*Perez v. Bar-K, Inc.*,
   No. 14-cv-05549-SJW (JSC), 2015 WL 4454785 (N.D. Cal.
   June 4, 2015) ...................................................................................... 15

*Philip Morris USA, Inc. v. Castworld Prod., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) ................................................. 6, 7, 15

*Playboy Enterprises Int'l, Inc. v. Muller*,
   314 F. Supp. 2d 1037 (D. Nev. 2004) ................................................... 4

*Pope v. U.S.*,
   323 U.S. 1 (1944) ............................................................................... 11

*Shanghai Automation Instrument Co. v. Kuei*,
   194 F. Supp. 2d 995 (N.D. Cal. 2001) .................................................. 7

*TeleVideo Sys., Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) (per curiam) ........................................ 3, 8

*U.S. v. Broaster Kitchen*,
   CV 14-09421 MMM, 2015 WL 4545360 (C.D. Cal. May 27,
   2015) ................................................................................................... 15

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................. 10

California Code of Civil Procedure Section 1021.5 ................................... 13

ERISA, 29 U.S.C.A. § 1132(g)(1) ............................................................ 13

ERISA § 502(a)(3) .................................................................................... 9

Service Members Civil Relief Act (50 U.S.C. App. § 521) ......................... 5

**Other Authorities**

Local Rule 55-3 ................................................................................ 13, 15

Rule 55(a)................................................................................................. 5

Rule 55(b).......................................................................................... 3, 4, 5

Rule 55(b)(2) ...................................................................................... 4, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Leprino Foods Company and Leprino Foods Health & Welfare Plan (the "Plan," and collectively, "Leprino") apply to the Court for entry of a default judgment against Defendant Cristina "Luz" Perryman ("Ms. Perryman"). Leprino added Ms. Perryman as a defendant after discovering that she engaged in the conspiracy to profit from Leprino's Plan together with fellow employee Defendant Amy Zaragoza, the three Surgery Center Defendants, various Surgeon Defendants, and anesthesia provider Charles K. Neal. Ms. Perryman has defaulted on her obligations to answer or otherwise respond to the Third Amended Complaint ("TAC").

In considering a default judgment, the Court looks to the operative pleadings to determine the liability for Ms. Perryman's alleged harms. At present, the TAC is the operative complaint and alleges that Ms. Perryman conspired with fellow Leprino employee Amy Zaragoza to recruit other Leprino employees and their beneficiaries by soliciting them from the Leprino Plant located in Lemoore, California. (TAC ¶¶ 26, 52, 53, 58.) Ms. Perryman and Ms. Zaragoza then connected the recruited Leprino employees with the Surgery Center Defendants and Surgeon Defendants to receive uncovered procedures, plastic surgery procedures, injections, and paid leaves of absence ("LOA") from work. (TAC ¶¶ 58, 74, 81, 97, 98.) In exchange, Ms. Perryman received unlawful kickbacks in the form of monetary and non-monetary remuneration and bribes for herself and her beneficiaries. (TAC ¶¶ 26, 42, 130.) Significant examples are provided throughout the TAC of the recruited employees and beneficiaries, their uncovered procedures and paid LOAs, and of the resulting harm to Leprino. (*See, e.g.,* TAC ¶¶ 46-117.) The scheme caused more than $2.2 million in harm. (TAC ¶ 116.)

Pursuant to Federal Rule of Civil Procedure ("Rule") 55(b), Leprino sought and the Court entered a notice of default against Ms. Perryman.  Ms. Perryman's failure to respond or remedy the notice of default authorizes Leprino to apply for and obtain default judgment establishing liability and the amount of harm. By way of this Application for Entry of Default Judgment (the "Application"), Leprino provides legal and evidentiary support for a default judgment and respectfully requests that the Court enter the relief sought.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Leprino brings this action as a party and a Plan fiduciary to recover damages and attorneys' fees and costs and to seek restitution of ill-gotten gains, including equitable restitution. (TAC ¶ 1.) Leprino pursues Ms. Perryman as a Defendant to claims for (1) Fraud; (2) Equitable Remedies under ERISA; (3) Violations of California's Unfair Competition Law ("UCL"); and (4) Intentional Interference with Contractual Relations. The claims are based on Ms. Perryman's involvement in the conspiracy to recruit Leprino's employees and their beneficiaries for surgeries that were not covered by the Plan. (TAC ¶ 26.) Ms. Perryman, along with the other named Defendants, conspired to recruit Leprino employees and their beneficiaries for "mommy makeovers," cosmetic gastric weight loss surgeries, and related uncovered and/or non-medically necessary procedures. (*Id*.)

Ms. Perryman resides in Hanford, California, and used to work at Leprino's nearby Plant in Lemoore, California. (Dkt. 251, TAC ¶¶ 9, 58, Dkt. 258.) After filing the complaint, Leprino discovered that Ms. Perryman had worked with Ms. Zaragoza, another former Leprino employee, to recruit Leprino employees and their beneficiaries to have procedures at Mountain View, Avani, and Bedford surgery centers. (TAC ¶ 26; Dkts. 218-2, 218-8, 218-9, 218-10 (Decl. in support of Motion to Amend ¶¶ 3, 10-12, Exs. F-G).)

Leprino then filed a motion to add Ms. Perryman to the lawsuit, which was granted on September 27, 2023. (Dkts. 218, 218-1, 239.) In the Motion to Amend and Application to Seal, Leprino evidenced Ms. Perryman's involvement with text messages produced by Defendant Mayer implicating a "Cristina" who ███████████████████████████████████████████████████ ████████████████████. In addition, Leprino included a copy of Ms. Zaragoza's response to Interrogatory No. 6 implicating, under oath, a "Christine Parmen" as the person who referred Leprino employees to Ms. Zaragoza to connect them with Defendant Mountain View Surgical Center. Further, Leprino filed copies of communications from United Healthcare Services, Inc. naming Cristina "Luz" Perryman as a person of interest in the investigated scheme. (*See, e.g.*, Dkts. 220-1(Decl. ¶¶ 10-12); 220-8(Ex. F); 220-9(Ex. G); 220-10(Ex. H) [redacted to comply with Court order Dkt. 228].)

On October 3, 2023, the Court issued a summons in Ms. Perryman's name, and Leprino effectuated personal service on October 8, 2023. (Dkts. 258, 271.) Once Ms. Perryman's response deadline expired, Leprino sought and the Clerk of Court entered a default against Ms. Perryman on November 13, 2023. (Dkts. 298, 304.)

## III.    LEGAL STANDARD

Rule 55(b) authorizes the Court to enter a default judgment after a defendant fails to respond to the operative complaint and the Clerk of Court enters default. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). After the Clerk enters default, a defendant's liability is conclusively established, and the well-pled factual allegations in the TAC are accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken

as true." *See Playboy Enterprises Intern., Inc.*, 314 F. Supp. 2d at 1039–40 (finding (quoting *Geddes*, 559 F.2d at 560).

Default Judgment may be entered either by the clerk or by the court. (Rule 55(b).) However, default judgment may be entered by the clerk only if plaintiff's claim "is for a sum certain or a sum that can be made certain by computation." (*Id.*) In all other cases, default judgment must be entered by the court. (*Id.*) Here, because Leprino's prayer for relief includes reasonable attorneys' fees and costs, Leprino applies for default judgment entered by the Court. *TCF Inventory Fin., Inc. v. Marker Oil Co.*, Inc., No. 2:17-CV-1768 JAM DB, 2018 WL 1634120, at *2 (E.D. Cal. Apr. 5, 2018) (citing *GAG Enterprises, Inc. v. Rayford*, 312 F.R.D. 230, 234 (D.D.C. 2015) (vacating the clerk's entry of default judgment because the Clerk is not able to enter default judgment for discretionary awards, including discretionary attorneys' fees.)

If default judgment is sought from the court, then the party must apply and satisfy certain procedural obligations specific to: (1) whether the person is a minor or unrepresented incompetent person; (2) whether the person has appeared personally or through a representative; and (3) the court may conduct a hearing or make referrals – preserving any federal statutory right to jury trial – when it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter. (Rule 55(b)(2).)

A default judgment is appropriate and will not be disturbed if a defendant has received notice of the filing of the action and has intentionally failed to answer. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988); *Playboy Enterprises Int'l, Inc. v. Muller*, 314 F. Supp. 2d 1037, 1039 (D. Nev. 2004) (holding "[i]n this case, Defendants' failure to respond to Playboy's Complaint is grounds for this Court to enter a default

judgment"). The merits of the case need not be assessed when a defendant "has received actual or constructive notice of the filing of the action and failed to answer." *Meadows v. Dominican Republic*, 817 F.2d 517, 522 (9th Cir. 1987) (holding "[b]ecause appellants' neglect was inexcusable, we need not determine whether the record shows a meritorious defense or prejudice to the appellees").

## IV.   ARGUMENT

### A.   Rule 55(b) Supports an Award of Default Judgment Against Ms. Perryman

Leprino is entitled to a default judgment holding Ms. Perryman liable for the allegations in the TAC on the first four claims. As an initial matter, Leprino seeks the entry by the Court on the basis that Leprino has met the procedural requirements for entry of default judgment under Rule 55(b) and Central District of California Local Rule ("L.R.") 55-1. (See Declaration of Katherine A. Bowles ("Bowles Decl."), ¶¶ 3-5.)

Namely, on November 13, 2023, the Clerk entered default pursuant to Rule 55(a) against Ms. Perryman following her failure to plead or otherwise defend herself against the TAC. (Dkt. 304; Bowles Decl. ¶ 3.) Ms. Perryman is not an infant or incompetent person, and there appears to be no basis for application of the Service Members Civil Relief Act (50 U.S.C. App. § 521). (*Id*. at ¶ 4.) Further, Leprino has served the Notice and Application for Default Judgment on Ms. Perryman, even though it is not required by Rule 55(b)(2). (*Id*. at ¶ 5.) Therefore, the procedural prerequisites for entry of default judgment have been met. (*See, e.g.*, *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (finding that plaintiffs met the procedural requirements where they addressed each required factor in their application for default judgment).)

///

**B.    The *Eitel* Factors Support Granting Leprino's Application for Default Judgment**

In determining whether to grant an application for default judgment, a court considers several factors (the "*Eitel* factors"), which are: "(1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). In the sections that follow, Leprino addresses the *Eitel* factors and establishes why each one weighs in favor of default judgment.

**1.    Leprino Will Suffer Undue Prejudice Absent Default Judgment Against Perryman**

The first factor asks the Court to determine whether Leprino will suffer undue prejudice absent default judgment. (*Id*.) This factor weighs in favor of Leprino, because Ms. Perryman's absence from the process renders it difficult to compel her involvement in discovery, deposition, and at trial, which will prevent Leprino from seeking a judgment in the course of the anticipated jury trial. *See Bank v. Karasevic*, No. 11CV00896J, 2015 WL 12977100, at *3 (N.D. Cal. Oct. 16, 2015) ("Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy"); *Philip Morris USA, Inc. v. Castworld Prod.*, Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery.").

Although there are multiple defendants who may be held jointly and severally liable for the harm caused, undue prejudice remains present when plaintiff's business has been greatly impacted by the absent defendant's

actions. *See Shanghai Automation Instrument Co. v. Kuei,* 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (holding that the plaintiff would be prejudiced if default judgment was not entered against the defaulting defendant – despite the involvement of multiple defendants – because the defaulting defendant could not be located and plaintiff's operations were disrupted by the injuries.)

Similarly, here, Leprino has been unduly prejudiced by the fact that its Plan operations have been disrupted by the significantly increased expenses resulting from the fraudulent billing to the Plan. (Bowles Decl. ¶ 10.) For several months in 2021, the Plan expenses were increasing a couple hundred percent each month and these expenses were not sustainable in the long term. (*Id.*) It took additional time and expense to investigate and bring Defendants' misconduct to light, which necessitated the filing of this action in order to cause a stop payment on the Defendants' ongoing submission of claims to United. (*Id.*) In fact, United continued paying Defendants' claims even after the Complaint was filed and finally ceased making Leprino Plan payments in December 2022. (Dkt. 208 at p. 6 "United processed the claims, from in or about March 2019 to December 2022.") Without this lawsuit, Leprino would have continued to incur harms and risked financial instability. (*Id.*) Therefore, this first *Eitel* factor weighs in favor of granting default judgment against Ms. Perryman.

### 2.    Perryman's Role in the Scheme is Well-Pleaded and Leprino Will Prevail on the Claims Against Her

As the Court considers the second and third *Eitel* factors – including whether Leprino "state[s] a claim upon which [it] may recover" and whether Leprino will prevail upon those claims – the Court must presume it so long as the operative complaint pleads each element of the claim against Ms. Perryman. *Eitel*, 782 F.2d at 1471; *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 499-500 (C.D. Cal. 2003) (holding that the

1  plaintiff stated a claim on which it may recover simply by holding that the

2  plaintiff's complaint properly alleged the necessary elements of the claims.);

3  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176 (holding that plaintiff proved the

4  elements of each claim for the purposes of default judgment by properly

5  alleging the elements of that claim.)

6      Leprino asserts claims against Ms. Perryman for: (1) Fraud; (2)

7  Equitable Remedies under ERISA; (3) Violations of UCL; and (4) Intentional

8  Interference with Contractual Relations. Here, the well-pled allegations (as

9  set forth in more detail in sections 2(a) – 2(d) below) were deemed true upon

10  the Clerk's entry of default. *TeleVideo Sys., Inc.*, 826 F.2d at 917–19;

11  *Geddes*, 559 F.2d at 560.

12              **a.    Ms. Perryman's Conduct Amounts to Fraud**

13      The elements of fraud are: (1) misrepresentation; (2) knowledge of the

14  falsity, or scienter; (2) intent to defraud; (4) justifiable reliance; and (5)

15  resulting damages. *Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).*

16      In the TAC, Leprino sufficiently alleges Perryman's knowing and

17  intentional involvement in a scheme to defraud Leprino by recruiting its

18  employees and Plan beneficiaries for "mommy makeovers," cosmetic gastric

19  weight loss surgeries, and related uncovered and/or non-medically

20  necessary procedures by making misrepresentations that these surgeries

21  were "free or discounted plastic surgeries upon presenting 'full coverage

22  insurance (PPO).'" (TAC ¶¶ 26, 74.) Additionally, Ms. Perryman and Ms.

23  Zaragoza's recruitment scheme involved conspiring to provide false medical

24  documentation to qualify Leprino employees for paid LOAs. (TAC ¶¶ 56, 66.)

25      As stated in the TAC, Ms. Perryman conspired to and did recruit

26  patients for the scheme, all the while knowing that their claims would be

27  falsified and billed to Leprino and she knowingly participated in the scheme

28  herself. (TAC ¶¶ 52, 53; Dkt. 218-8 (Ex. F); Bowles Decl. ¶ 7, Ex. A.) In

8

addition, Ms. Perryman knew or should have known that she was required to: (1) truthfully and accurately report the procedures received and claimed to the Plan; (2) avoid obtaining personal payment and inducement for procedures referred to the Surgery Center Defendants and Surgeon Defendants and billed to the Plan; (3) refrain from recruiting patients to a scheme in exchange for inducements and paid LOAs; and (4) refrain from personally engaging in the scheme to benefit herself and her beneficiaries covered by the Plan. (TAC, ¶¶ 115, 128.)

Ms. Perryman intentionally and knowingly violated the above by acting as a recruiter in a scheme to submit intentionally misleading, fraudulent and/or erroneous claims to the Plan, including for ▮▮▮▮▮ procedures. (TAC, ¶¶ 26, 120.) Leprino reasonably relied upon the truth of the stated bills in making payments to the Defendants. (TAC, ¶¶ 115-16.) As a result, Leprino sufficiently alleges its fraud claim against Ms. Perryman.

### b.    Leprino's Equitable Remedies Under ERISA

The elements of a claim for equitable remedies under ERISA are: (1) a promise by the beneficiary to reimburse the fiduciary for recovery of benefits paid under the plan; (2) the agreement specifically identifies a particular fund from which the fiduciary will be reimbursed; and (3) the particular funds identified are within the possession and control of the beneficiary. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1093 (9th Cir. 2012) (citing *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 357, 126 S. Ct. 1869, 1869 (2006).). Leprino sufficiently alleged all three prongs of the test set forth in *Bilyeu*, 683 F.3d at 1093-1094.

Leprino has standing under ERISA § 502(a)(3) to enforce the terms of the Plan and pursue any overpayments that are made to patients or providers on their behalf, including to Ms. Perryman. Ms. Perryman knew that the Plan covered procedures that were properly authorized and covered

by the Plan and knew that her procedures were <u>not</u> covered by the Plan and would result in an overpayment to herself and to Defendants (she is ████ ██ in the TAC). Leprino alleges the amounts were paid to a particular fund or funds that can be traced, and the entire sum returned. (TAC ¶¶ 122-126.) As such, Leprino has pled all three elements of the claim.

### c.    Ms. Perryman's Violations of the UCL

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice. . . ." Cal. Bus. & Prof. Code § 17200. "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir.2012). Here, Leprino has sufficiently shown that Ms. Perryman's actions recruiting Leprino employees and beneficiaries to receive procedures are violations under the 'unfair,' 'unlawful,' and 'fraudulent' prongs. In exchange for recruiting and referring patients, Ms. Perryman received unlawful kickbacks, in the form of monetary and non-monetary remuneration and bribes. (TAC ¶¶ 26, 42, 111-117, 130.) Such actions qualify as illegal actions and violations of the UCL. (See *Bay City v. ILWU-PMA Welfare Plan Board of Trustees & ILWU-PMA Welfare Plan*, 2018 WL 1942765, at *12-13 (C.D. Cal., Feb. 1, 2018) (the plaintiffs sufficiently alleged violations of the 'unlawful' prong where the cited laws related to the misconduct alleged).)

### d.    Ms. Perryman's Intentional Interference with the Contractual Relations Between Leprino and Its Plan Members.

The elements of a claim for tortious interference with contractual relations are:

> (1) [Leprino] has a valid and existing contract with a third party; (2) defendants had knowledge of the contract; (3) defendants committed an intentional act designed to induce a breach or disrupt the contractual

relationship; (4) actual breach or disruption of the contract relationship occurred; and (5) damages were suffered as a result. *Almont*, 121 F.Supp.3d at 979.

Leprino and its Plan members had a valid and existing contract. (TAC, ¶ 137.) Ms. Perryman intentionally and knowingly interfered with this contractual relationship by recruiting and inducing the patients (the Leprino employees and beneficiaries) to accept services from the Defendants in violation of the Plan's provisions, including by offering Leprino members certain co-pay waivers, plastic surgeries, cosmetic injections, and paid LOAs. (TAC, ¶ 138.) As a direct and proximate result of Ms. Perryman's intentional interference, the Plan's relationship with the members was disputed and the Plan suffered damages as a result. (TAC ¶ 139.) Thus, Leprino has properly stated the elements of Perryman's intentional interference with contractual relations. (*See, e.g.*, TAC at ¶¶ 110 – 126, 136 – 140.)

Since all four claims are properly stated, the Court should find that Leprino will prevail and that Leprino has established Ms. Perryman's liability under the second and third *Eitel* factors.

### 3. The Request for Monetary Damages, Attorney Fees, and Costs are Reasonable, Documented, and In Accordance With the Allegations and Relief Pled

The fourth *Eitel* factor also looks at the "sum of money at stake in the action" in the case of an entry of default judgment. *Eitel,* 782 F.2d at 1471. A court has discretion upon default, to take into evidence and compute facts of record to fix the amount which plaintiff is lawfully entitled to recover and to give judgment accordingly. *Pope v. U.S.,* 323 U.S. 1, 11-12 (1944)[1]; *In re*

---

[1] Stating, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to

1  *Consolidated Pretrial Proceedings in Air West Securities Litigation ("Air*
2  *West"),* 436 F.Supp. 1281, 1286-92 (N.D. Cal. 1977) (granting a default
3  judgment and finding plaintiff was damaged in the amount of $48 million
4  dollars). Indeed, once default is entered, Defendants objecting to a default
5  judgment "bear a heavy burden; they must demonstrate that the well-
6  pleaded allegations. . . . are incapable of proof or are contrary to facts
7  judicially noticed or to uncontroverted material of record." *Air West,* 436
8  F.Supp. at 1291.

9       In ruling on this Application, the Court may rely on detailed affidavits or
10  documentary evidence to determine the appropriate amount of damages.
11  *Int. Painters and Allied Trades Ind. Pension Fund v. R. W. Amrine Drywall*
12  *Co., Inc.*, 239 F.Supp.2d 26, 30 (2002). Here, the calculation of harm is
13  supported by the Bowles Declaration and Exhibits and supporting United
14  Declaration included with Exhibit A. Specifically, based on United's financial
15  report United 004711 and upon the December 2023 invoice for attorneys'
16  fees and costs through November 30, 2023, Leprino's harm amounts to a
17  total of $2,053,896.66, which includes an unrecouped economic loss
18  $1,984,518.61 plus reasonable attorneys' fees of $45,290.37, and costs of
19  $24,087.68 . (Bowles Decl. ¶¶ 7-9, Exs. A-B.)

20       Moreover, because the harm Ms. Perryman caused as a recruiter and
21  participant in the scheme is indivisible from the acts and conduct of the
22  remaining Defendants, Ms. Perryman is subject to a judgment for the total
23  amount of the harm. *Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578,
24  587 (1978) ("a tortfeasor is liable for any injury of which his negligence is a
25  proximate cause"); *see also Fed. Deposit Ins. Corp. Butte Cmty. Bank v.*
26  *Ching*, No. 213CV01710KJMEFB, 2017 WL 2225094, at *5 (E.D. Cal. May

27  _____

28  recover and to give judgment accordingly." (Citations omitted).

22, 2017) (holding that ten defendants were jointly and severely liable for $8.8 million in damages for negligence and breach of fiduciary duty of care because the results produced by their acts were indivisible).

In addition, both the ERISA and UCL claims authorize the award of attorneys' fees and costs against Ms. Perryman. Pursuant to ERISA, 29 U.S.C.A. § 1132(g)(1), a plaintiff who is a fiduciary of the plan is entitled to reasonable attorney's fees and costs in the court's discretion. *See Int'l Painters and Allied Trades Industry Pension Fund v. R.W. Amrine Drywall Co., Inc., et al.* ("*Int'l Painters*")*,* 239 F.Supp.2d 26, 31 (D.D.C. 2002) ("When a court awards a default judgment against a defendant. . . . ERISA provides that the court must award. . . . and (4) reasonable attorney's fees and costs of the action.").

In the Central District of California, Local Rule 55-3 dictates a fee schedule for the recovery of reasonable attorney's fees. Using this schedule, Leprino is entitled to attorney's fees of $45,290.37. (Bowles Decl. ¶ 9). Further, the Court may look to "itemized billing statements" in support of reasonable costs. *See Int'l Painters,* 239 F.Supp.2d at 32. Leprino's itemized cost statement evidences $24,087.68 in costs up through and including December 2023. (Bowles Decl. ¶ 10, Ex. B).

Similarly, for violations of the UCL, Leprino may seek attorneys' fees as a private attorney general under California Code of Civil Procedure Section 1021.5, which provides that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." *Bui v. Nguyen*, 230 Cal. App. 4th 1357, 1366 (2014) (citing *Zhang*, 57 Cal. 4th at 371, fn. 4).) Section 1021.5 authorizes attorneys' fees when:

> [A] significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general

> public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery. . . .

Here, Leprino has conferred a significant benefit on the public by bringing to light the misconduct of the Defendants, who have harmed multiple health plans through the same or similar schemes, including, specifically, T-Mobile's Plan, AT&T's Plan, and Estee Lauder's Plan. (TAC ¶¶ 26, 62; *McCormick v. Pub. Employees' Ret. Sys.*, 90 Cal. App. 5th 996, 1005 (2023) (holding that the significant public benefit conferred does not need to be great or even readily ascertainable and may be obtained through an individual's private right of enforcement) (citing *Indio Police Command Unit Assn. v. City of Indio*, 230 Cal. App. 4th 521, 543 (2014).)

Moreover, there has not been any public enforcement, such that Leprino's action for private enforcement is both necessary and adequate, consistent with the standard established in *Bui*, 230 Cal. App. 4th at 1366 (citing *Conservatorship of Whitley*, 50 Cal. 4th 1206, 1217, 241 P.3d 840, 848 (2010) ("The 'necessity ... of private enforcement' has long been understood to mean simply that public enforcement is not available, or not sufficiently available.").) Although United shared some of its investigation findings with the Federal Bureau of Investigation ("FBI"), the FBI has not stepped in to prosecute the action. (TAC ¶¶ 75, 84; Bowles' Decl. ¶ 11.) As a result, private enforcement remains the only option.

Finally, Leprino has met the requirement that the burden of private enforcement be "out of proportion to [the plaintiff's] individual stake in the matter." *Bui*, 230 Cal. App. 4th at 1367. Here, Leprino has spent nearly three-quarters of a million dollars prosecuting Defendants for approximately

$2.2 million in harm to the Plan. Hence, the attorneys' fees and costs are as much about enforcing an important right as they are about achieving victory.

Based on the above and on Local Rule 55-3, Leprino is entitled to attorney's fees of $45,290.37 and costs of $24,087.68.

### 4.    There is No Potential Dispute of Material Facts

The fifth *Eitel* factor weighs in favor of default judgment. Because Leprino's well-pleaded allegations must be deemed admitted for purposes of this motion, there is no evidence of any disputed material fact. *Perez v. Bar-K, Inc.*, No. 14-cv-05549-SJW (JSC), 2015 WL 4454785, at *12 (N.D. Cal. June 4, 2015); *see also Philip Morris USA, Inc.*, 219 F.R.D. at 500 ("Here, Plaintiff filed a well-pleaded TAC alleging the facts necessary to establish its claims, and the court clerk entered default against the Defendant. Thus, no dispute has been raised regarding the material averments of the TAC").

### 5.    There Is No Evidence of Excusable Neglect

*Eitel's* sixth factor weighs in favor of Leprino and of entering default judgement against Ms. Perryman. Leprino personally served Perryman with the TAC over four months ago and she has never responded, despite having ample time to do so. (Dkt. 271; Bowles Decl. ¶¶ 2, 6.) In addition, it appears that her failure to appear is intentional, as Ms. Perryman was evading service of a deposition subpoena at her home, which required Leprino to serve her personally at her new place of employment Del Monte Foods. (Bowles Decl. ¶ 6.) *See U.S. v. Broaster Kitchen*, CV 14-09421 MMM (PJWx), 2015 WL 4545360 at *18-19 (C.D. Cal. May 27, 2015) ("Since service was effected, defendants have neither responded to the TAC nor attempted to have their defaults set aside. This chronology compels the conclusion that defendants' defaults were not the product of excusable neglect."). Given the above, Ms. Perryman will not be able to show that her failure to appear is the result of any excusable neglect.

### 6.    A Decision on the Merits Does Not Weigh Against Entering Default Judgment Given Perryman's Consistent Failure to Appear

The seventh and final *Eitel* factor holds htat public policy generally favors cases being decided on the merits.  However, Ms. Perryman's failure to defend this action has rendered it impossible to make a decision on the merits. Indeed, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005). As noted above, Leprino personally served Ms. Perryman with the TAC over four months ago; she has had ample time to respond, and still, has not appeared and has evaded personal service of a deposition subpoena. (Dkt. 271; Bowles Decl. ¶¶ 2, 6.) In sum, the last *Eitel* Factor and all of the *Eitel* factors heavily favor granting default judgment against Ms. Perryman.

## V.    CONCLUSION

Based upon the foregoing, Leprino seeks a Court order granting this Application and entering judgment in favor of Leprino and against Ms. Perryman on the claims for Fraud, ERISA, UCL Violations, and Intentional Interference with Contract in the amount of $2,053,896.66.

DATED:  February 22, 2024              HANSON BRIDGETT LLP

By: _____
KATHERINE A. BOWLES
Attorneys for Leprino Foods Company, Leprino Foods Health & Welfare Plan

16

1

## PROOF OF SERVICE

2

**Leprino Foods Company, et al., v. Avani Outpatient Surgical Center, et al.**
**U.S.D.C. Central District of CA, Case No. 2:22-cv-07434 DSF (JC)**

3

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4

5
At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 777 S. Figueroa Street, Suite 4200, Los Angeles, CA 90017.

6

7
On February 22, 2024, I served true copies of the following document(s) described as **LEPRINO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT CRISTINA "LUZ" PERRYMAN** on the interested parties in this action as follows:

8

9

### SEE ATTACHED SERVICE LIST

10
**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address sabrignani@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

11

12

13
**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

14

15

16
I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

17

18
Executed on February 22, 2024, at Los Angeles, California.

19

20
/s/ Silvia Abrignani
Silvia Abrignani

21

22

23

24

25

26

27

28

**SERVICE LIST**

**Leprino Foods Company, et al., v. Avani Outpatient Surgical Center, et al.**

**U.S.D.C. Central District of CA, Case No. 2:22-cv-07434 DSF (JC)**

| | |
|---|---|
| Nicholas D. Jurkowitz<br>Fenton Law Group LLP<br>1990 S. Bundry Drive, Suite 777<br>Los Angeles, CA 90025<br>PH:  310-444-5244<br>FX:  310-444-5280<br>Emails:<br>njurkowitz@fentonlawgroup.com<br>nnatelsky@fentonlawgroup.com<br>esun@fentonlawgroup.com | Attorneys for Defendants<br>Avani Outpatient Surgical Center, Inc., and Mountain View Surgical Center, Inc. |
| Jerry Sparks, Esq.<br>Sparks Law Form, APC<br>650 Town Center Drive, Suite 1200<br>Costa Mesa, CA 92626<br>PH:  714-546-4300<br>FX:  714-546-5430<br>irs@sparksfirm.com | Attorney for Defendant<br>Ralph Mayer |
| Nigel Burns, Esq.<br>Nick Stahl<br>The Law Offices of Nigel Burns<br>800 West 1st St., Suite 401-12<br>Los Angeles, CA 90012<br>PH:  213-687-8080<br>FX:  213-687-8383<br><br>nburns@burnsattorneys.com<br>nstahl@burnsattorneys.com<br>dturner@burnsattorneys.com | Attorney for Defendant<br>Amy Zaragoza |
| Bruce A. Berman<br>The Berman Law Firm, APC<br>1875 Century Park East, Ste. 2230<br>Los Angeles, CA 90067<br>PH:  213-683-1908<br>Email:  Bruce@bermanlawapc.com | Attorney for Defendant<br>The Center for Surgery at Bedford, LLC |

[Note: Updated April 2023]

1  Michael M. Amir                          Attorneys for Defendant
   Mary Tesh Glarum                         Sepehr Lalezari
2  Doll Amir & Eley LLP
   725 S. Figueroa Street, Suite 3275
3  Los Angeles, CA  90017
   PH: 213.542.3380
4  FX: 213.542.3381
   Emails:
5  mamir@dollamir.com
   mglarum@dollamir.com
6  cramirez@dollamir.com

7  Steven M. Goldsobel                      Attorney for Defendant
   Vandad Khosravirad                       Shervin Aminpour
8  Law Offices of Steven Goldsobel
   1901 Avenue of the Stars, Suite 1750
9  Los Angeles, CA 90067
   PH: 310-552-4848
10 E-mails:
   steve@sgoldsobel.com
11 vandad@sgoldsobel.com
   samantha@sgoldsobel.com
12

13 Ryan G. Jacobson                         Attorney for Defendant
   Edward A. Stumpp                         Michael Yadegari
   Helton Law Group APC
14 1590 Corporate Drive
   Costa Mesa, CA 92626
15 T: 562-901-4499 *IF:* 562-901-4488
   Emails:
16 estumpp@helton.law
   rjacobson@helton.law
17 tkossick@helton.law
   ckoop@helton.law
18

19 Benjamin N. Gluck                        Attorney for Defendant
   Elliot C. Harvey Schatmeier              Dr. Samuel Kashani; Daniel
20 Bird, Marella, Rhow, Lincenberg,         Shouhed, M.D.
   Drooks & Nessim, LLP
   1875 Century Park East, 23rd Floor
21 Los Angeles, California 90067
   PH: (310) 201-2100
22 FX: (310) 201-2110
   Emails:
23 bgluck@birdmarella.com
   ehs@birdmarella.com
24 dthrockmorton@birdmarella.com
   tdicks@birdmarella.com
25

26

27

28

1 | Gary L. Tysch
Law Offices of Gary L. Tysch
2 | 16133 Ventura Blvd., Ste. 580
Encino, CA 91436
3 | PH:  818-995-9555
Fax: 818-995-9550
4 | gltysch@pacbell.net

Attorney for Defendant
Babek Moeinolmolki

5

6 | Scott J. Stitt
Anna-Sophie Tirre
Tucker Ellis LLP
7 | 515 South Flower Street   Forty
Second Floor
8 | Los Angeles, CA 90071-2223
Direct: 213-430-3304 (LA) | Cell: 614-
9 | 738-0865
scott.stitt@tuckerellis.com
10 | anna-sophie.tirre@tuckerellis.com
sofia.escalante@tuckerellis.com

Attorneys for Mojgan Kashanchi as
Administrator of Behnam
Kashanchi's Estate, Trustee of The
Behnam Kashanchi & Mojgan
Kashanchi Revocable Living Trust,
and Trustee of the Kashanchi B & M
Living Trust

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28